IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HEATHER B.,[1]                          )
                                        )
            Plaintiff,                  )
                                        )        CIVIL ACTION
v.                                      )
                                        )        No. 24-2434-JWL
FRANK BISIGNANO,[2]                     )
Commissioner of Social Security,        )
                                        )
            Defendant.                  )
_____ )

MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's alleged migraine headaches, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision herein.

_____

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On May 7, 2025, Mr. Bisignano was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano is substituted for Acting Commissioner Lee Dudek as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.    Background

Plaintiff protectively filed an application for SSDI benefits on November 19, 2021.  (R. 14, 171-75).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in evaluating her alleged migraine headaches in three respects; by finding the severity of her headaches were not medically equivalent to Listing 11.02, by failing to account for all the limitations resulting from her headaches, and by failing to evaluate her hearing testimony regarding her headaches.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only <u>supports</u> [a contrary] conclusion, but <u>compels</u> it." <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." <u>Bowman v. Astrue</u>, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991)); <u>accord</u>, <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1172 (10th Cir. 2005); <u>see also</u>, <u>Bowling v. Shalala</u>, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues <u>de novo</u>, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in <u>Bowling</u>)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). <u>Williams</u>, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. <u>Id.</u>

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. <u>Blea v. Barnhart</u>, 466 F.3d 903, 907 (10th Cir. 2006); <u>accord</u>, <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses errors alleged in Plaintiff's Social Security Brief but in an order more logically related to answering Plaintiff's claims of error, beginning with the ALJ's evaluation of Plaintiff's allegations of symptoms from her impairments.

## II.    The ALJ's Consideration of Plaintiff's Allegations of Symptoms

Plaintiff claims the ALJ erred in that she evaluated the credibility of Plaintiff's allegations in her function report but failed to evaluate Plaintiff's allegations of limitations in her hearing testimony. (Pl. Br. 20-22). She provided as an example, that

> at the hearing the Plaintiff testified to the following: she can only stand for 20 minutes; she experiences explosive diarrhea up to 10 times a day; her diarrhea forces her to change her undergarments/clothing and shower; she wears protective undergarments when she leaves her home in case of an accident; during her previous employment, she would utilize the restrooms 10 to 12 times per shift and would spend 10 to 15 minutes in the restroom each time; she previously missed 4 days per month due to her bowel problems and was disciplined for her frequent restroom breaks; she has tried multiple medications for her bowel and diarrhea, but medications have not helped; she experience migraines 2 to 3 times per month, which [sic] each migraine lasting 2 to 3 days.

Id. 22.  She argues, "Nowhere in the ALJ's purported credibility analysis did the ALJ mention the Plaintiff's sworn hearing testimony.  In fact, the ALJ did not mention the Plaintiff's allegations and statements from her sworn hearing testimony anywhere in the decision."  (Pl. Br. 21).  She argues the ALJ cannot ignore a claimant's statements.  Id. (quoting Barker v. Colvin, 2014 WL 2832753, *11 (D. Colo. Jun. 23, 2014)).  She continues,

> Clearly, the Plaintiff's testimony [at the hearing] provided much more detail and limitations than the function report relied upon by the ALJ.  Not acknowledging the Plaintiff's sworn hearing testimony is a perfect example of an ALJ cherry-picking evidence in an effort to minimize the seriousness of the Plaintiff's symptoms.

Id. 22.

Plaintiff argues the ALJ's finding her statements are not entirely consistent with the record evidence implies some of the statements are consistent with the evidence and the ALJ should have explained which allegations were found credible.  Id. 23.  She argues the error is not harmless because, "We cannot determine what the result would have been if the ALJ had considered all of the Plaintiff's limitations when assessing the RFC."  Id. 23-24.

The Commissioner argues Plaintiff's argument is without merit because the ALJ noted specific evidence about which Plaintiff testified at the hearing.  (Comm'r Br. 13) (citing R. 18, 22, 24).  He also argues that if there was error in not discussing testimony of specific limitations attributed to headache, it was harmless because "it is patently obvious that the ALJ considered Plaintiff's testimony about headaches as she never mentioned them in her function report, but the ALJ nevertheless evaluated her headaches throughout the sequential evaluation."  Id. 14 (citing R. 16-25).  He argues that in any case Plaintiff's suggestion the ALJ should have explained which allegations were consistent with the record evidence and which were not, is not required in law.  Id. (citing Toledo v. Comm'r, SSA, No. 24-5001, 2024 WL 4357913, at *2 (10th Cir. 2024); Bales v. Colvin, 576 F. App'x 792, 800 (10th Cir. 2014); April M. v. Kijakazi, No. 22-1218-JWL, 2023 WL 4545162, at *6 (D. Kan. July 14, 2023)).

## A.    Standard for Evaluating Allegations of Disabling Symptoms

An ALJ's evaluation of a claimant's allegation of symptoms is generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  Such "determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010); accord Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005).  Therefore, in reviewing an ALJ's evaluations, the court will usually defer to the ALJ on matters involving a claimant's allegations.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).  However, such findings "should be closely and affirmatively linked to substantial evidence and not just a

conclusion in the guise of findings." Wilson, 602 F.3d at 1144 (quoting Huston v.

Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective allegations

regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).[3]

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability. Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain. This court
> has stated: The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact
> disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

---

[3] Thompson, Luna, and Kepler, were decided when the term used to describe the
evaluation of a claimant's allegations of symptoms resulting from her impairments was
"credibility determination." Although that term is no longer used, the applicable
regulation never used that term and the procedure for evaluating a claimant's allegations
of symptoms has not significantly changed. Revisions to Rules Regarding the Evaluation
of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R.
§ 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination
was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688
Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in
Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as
explained in the regulations in effect on January 24, 2024, when this case was decided.
Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility
that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an
examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no
longer a valid factor to be considered.

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures the claimant has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### B.    The ALJ's Findings

The ALJ stated she had considered Plaintiff's allegations of symptoms and their consistency with the record evidence in accordance with 20 C.F.R. § 404.1529 and Soc. Sec. Ruling (SSR) 16-3p.  (R. 21).  The ALJ summarized the legal standard as explained above, and summarized Plaintiff's allegations of disabling symptoms as presented in her

Function Report. Id. 21-22. For almost three pages in the decision, the ALJ discussed the treatment records regarding each of Plaintiff's impairments and explained how Plaintiff's allegations of symptoms are inconsistent with that evidence. Id. 22-24.

The ALJ ended each paragraph discussing an impairment with an explanation: "there is little support to her allegations of chronic explosive diarrhea that would substantially impact work-related tasks," id. 22, "the medical findings tend to point to conservative treatment for the claimant's symptoms without evidence of detriment to her functional abilities," id. 22-23, "the medical evidence does indicate an impairment, but her minimal treatment and objective findings are not entirely consistent with the claimant's allegations, … medical evidence does indicate an impairment, but once again, the claimant's minimal treatment and the essentially normal objective evidence are not entirely consistent with the claimant's allegations, … the claimant's allegations are not consistent with the objective medical evidence that suggests her obesity would not entirely preclude the claimant from performing such work-related tasks mentioned above." (R. 23). The court quotes the ALJ's specific discussion of the evidence regarding Plaintiff's migraines:

> In the present case, the claimant's complaints of migraines have been relatively minimal, and she did not seek out specialized care for headaches from a neurologist nor was provided treatment for them during her visits (3F/4; 4F/9, 11[, R. 346, 380, 382]). Later visits did not indicate the claimant reported headaches other than for sinus pain or illness (7F/3; 9F/2; 10F/3, 16; 12F/14[, R. 444, 463, 472, 485, 596]). Also, it does not appear from the current record that she required emergency care for overwhelming headache pain, nor maintained a headache journal, as would be anticipated (although not required) in the case of severe headache pain and/or frequent migraine events. The record also does not provide objective evidence of

any impact on the claimant's cognitive functioning.  Thus, the medical
evidence is not consistent with the claimant's allegations.

Id. 24.

### C.    Analysis

As noted above, the ALJ provided reasons for discounting Plaintiff's allegations of
symptoms for each impairment. Yet Plaintiff made no attempt to challenge the ALJ's
reasons for discounting her allegations, instead arguing the ALJ did not address
Plaintiff's hearing testimony.  Although the ALJ did not specifically restate all the
hearing testimony, it is patently obvious she considered it as is most evidently proven by
her specific discussion of Plaintiff's migraines which were mentioned primarily in the
hearing testimony and marginally in the record evidence as discussed above and were not
mentioned at all in Plaintiff's function report.  Plaintiff has shown no error in the ALJ's
discounting her allegations of disabling symptoms.

Plaintiff's argument the ALJ should have explained which allegations were found
credible does not change that outcome.  As this court found in April M., 2023 WL
4545162, at *6,

> SSR 16-3p requires that the "decision must contain specific reasons for the
> weight given to the individual's symptoms, be consistent with and
> supported by the evidence, and be clearly articulated so the individual and
> any subsequent reviewer can assess how the adjudicator evaluated the
> individual's symptoms."  Brownrigg, 688 F. App'x at 546 (quoting SSR 16-
> 3p, 2016 WL 1119029 at *9).  What is required is for the ALJ to explain
> and clearly articulate his specific reasons for discounting Plaintiff's
> allegations of symptoms and those reasons must be supported by the record
> evidence.  That does not require an ALJ to address each individual
> symptom, but to address the individual's symptoms generally.  This is
> consistent with the fact that many symptoms cannot be sensed externally
> and it is impossible for a fact-finder—the adjudicator in a Social Security

disability case—personally to determine the presence, severity, and persistence of each symptom.  But in evaluating the entire record evidence [s]he will see consistencies and inconsistencies upon which [s]he may reach a determination.  Hence the necessity that the ALJ's rationale be supported by the record evidence.

2023 WL 4545162, at *6 (brackets added).  The ALJ provided her rationale for discounting Plaintiff's allegations of disabling symptoms, that rationale is supported by the record evidence, and Plaintiff points to no evidence compelling a different finding.

## III.    The Step Three Evaluation

Plaintiff claims the ALJ erred in finding no medical equivalence between Plaintiff's migraine headaches and the epilepsy Listings 11.02B and 11.02D because she failed to address the impact Plaintiff's headaches have on her functioning "in a manner that allows [the court] to confirm that a finding of no medical equivalence is supported." (Pl. Br. 9) (citing, without pinpoint citation, Lindsay M. v. Kijakazi, Civ. A. No. 21-2063-EFM, 2022 WL 612452, *14 (D. Kan. March 2, 2022)).[4]  She claims the ALJ failed to apply SSR 19-4p properly when she found, in part, Plaintiff's migraines did not medically equal Listing 11.02 because

physical exams do not document co-occurring observable signs, such as occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, or the need to be in a quiet or dark room during an examination.

(R. 21).

---

[4] Plaintiff attributes this district court case to the Tenth Circuit.  (Pl. Br. 9).

She also argues it was error to rely on SSR 17-2p in finding that neither a prior administrative medical finding, a medical expert (ME) opinion, or a report from the Appeals Council's medical support staff support a finding of medical equivalence when that SSR provides that "adjudicators at the hearings level may ask for and consider evidence from medical experts (ME) about the individual's impairments," and the ALJ did not seek such evidence.  (Pl. Br. 11-12) (quoting, without pinpoint citation, SSR 17-2p, 2017 WL 3928306, *3 (SSA March 27, 2017)).  Consequently, she argues the ALJ failed her duty to develop the record fully and fairly.  Id. 12.  Finally, Plaintiff points out the State Agency physicians did not discuss Plaintiff's migraines, and argues, "The ALJ failed to perform an adequate independent equivalency analysis and instead erroneously relied on the State Agency's evaluation which never even considered Plaintiff's primary headache disorder."  (Pl. Br. 12-13) (citing Phillip v. Saul, 2020 WL 4001162, at *24 (D. Neb. July 15, 2020); McCarthy v. Berryhill, 2020 WL 2079185, at *4 (D. Colo. April 30, 2020); Willis v. Comm'r of Soc Sec. Admin., 2020 WL 1934932, at *5 (E.D. Mich. April 22, 2020)).

The Commissioner responds that the step three decision was not solely based on the lack of required medical opinion evidence of medical equivalence but the ALJ

> considered that examinations did not reflect any functional abnormalities related to headaches ([R.] 21, citing [R.] 347, 381, 384, 446, 463-64, 487).  The ALJ then explained that the objective medical evidence did not indicate that Plaintiff's "headaches are incapacitating, even temporarily, as one would expect with a seizure disorder.  Therefore, the evidence does not suggest that the severity of the claimant's headache disorder medically equals listing 11.02"

(Comm'r Br. 7) (quoting R. 21).

The Commissioner argues the ALJ was correct to rely on the absence on examinations of certain co-occurring signs noted above because those signs are signs such as would be expected if Plaintiff's condition were medically equivalent to Listing 11.02B or 11.02D.  Id. 7-8.  The Commissioner argues, "as is readily apparent from the ALJ's narrative discussion, [s]he explained that no objective medical evidence supported the listing level criteria."  Id. 9 (citing R. 21).  He argues this fact confirms that the ALJ was not considering finding Plaintiff's headaches medically equaled a Listing and it would be futile to seek ME opinion evidence.

## A.    Step Three Standard for Evaluating Migraines as a Primary Headache Disorder

The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling.  20 C.F.R. § 404.1525(a); see also, Pt. 404, Subpt. P, App. 1 (Listing of Impairments).  If a claimant's condition meets or equals the severity of a Listed impairment, that impairment is conclusively presumed disabling. Williams, 844 F.2d at 751; see also, Bowen v. Yuckert, 482 U.S. 137, 141 (1987) (if claimant's impairment "meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled").  However, the claimant "has the burden at step three of demonstrating, through medical evidence, that h[er] impairments 'meet all of the specified medical criteria' contained in a particular listing."  Riddle v. Halter, No. 00-7043, 2001 WL 282344 at *1 (10th Cir. Mar. 22, 2001) (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis in Zebley)); see also, Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (burden shifts to Commissioner only at step five).  "An

impairment that manifests only some of [the Listing] criteria, no matter how severely, does not qualify" to meet or equal the Listing. <u>Zebley</u>, 493 U.S. at 530.

"The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of h[er] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Zebley</u>, 493 U.S. at 532-33 (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). The Listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." <u>Yuckert</u>, 482 U.S. at 153. "Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." <u>Caviness v. Apfel</u>, 4 F. Supp. 2d 813, 818 (S.D. Ind. 1998).

<u>Medical equivalence</u> to a Listing may be established as explained in the regulations, "If you have an impairment(s) that is not described in appendix 1, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are <u>at least of equal medical significance</u> to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 404.1526(b)(2). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. § 404.1526(c).

SSR 19-4p explains how the SSA evaluates cases involving primary headache disorders, of which migraine headaches is one. The Ruling provides the diagnostic

criteria for migraine with or without aura.  SSR 19-4p, 2019 WL 4169635, *4-5 (SSA

Aug. 26, 2019).  The Ruling explains that in establishing the existence of a primary

headache disorder the agency will consider a combination of findings including a

diagnosis by an acceptable medical source (AMS), remarkable or unremarkable findings

on laboratory tests, response to treatments, and

> An observation of a typical headache event, and a detailed description of
> the event including all associated phenomena, by an AMS.  During a
> physical examination, an AMS is often able to observe and document signs
> that co-occur prior to, during, and following the headache event.  Examples
> of co-occurring observable signs include occasional tremors, problems
> concentrating or remembering, neck stiffness, dizziness, gait instability,
> skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid,
> forehead or facial sweating, pallor, constriction of the pupil, drooping of the
> upper eyelid, red eye, secretion of tears, and the need to be in a quiet or
> dark room during the examination.  In the absence of direct observation of a
> typical headache event by an AMS, we may consider a third party
> observation of a typical headache event, and any co-occurring observable
> signs, when the third party's description of the event is documented by an
> AMS and consistent with the evidence in the case file.

SSR 19-4p, 2019 WL 4169635, *6.

The Ruling explains that Listing 11.02 (epilepsy) "is the most closely analogous

listed impairment for an MDI of a primary headache disorder."  Id. *7.  It also explains

that "a person with a primary headache disorder may exhibit equivalent signs and

limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures),

and we may find that his or her MDI(s) medically equals the listing."  Id.  In also explains

that in evaluating Listing 11.02B, the agency considers,

> A detailed description from an AMS of a typical headache event, including
> all associated phenomena (for example, premonitory symptoms, aura,
> duration, intensity, and accompanying symptoms); the frequency of
> headache events; adherence to prescribed treatment; side effects of

treatment (for example, many medications used for treating a primary
headache disorder can produce drowsiness, confusion, or inattention); and
limitations in functioning that may be associated with the primary headache
disorder or effects of its treatment, such as interference with activity during
the day (for example, the need for a darkened and quiet room, having to lie
down without moving, a sleep disturbance that affects daytime activities, or
other related needs and limitations).

Id.  It also explains,

To evaluate whether a primary headache disorder is equal in severity and
duration to the criteria in 11.02D, we consider the same factors we consider
for 11.02B and we also consider whether the overall effects of the primary
headache disorder on functioning results in marked limitation in:  Physical
functioning; understanding, remembering, or applying information;
interacting with others; concentrating, persisting, or maintaining pace; or
adapting or managing oneself.

Id.  (underline added).

The Listings for epilepsy relevant here are:

11.02 Epilepsy, documented by a detailed description of a typical seizure and

characterized by A, B, C, or D:

*** 

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at

least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see

11.00C); or

*** 

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks

for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment

(see 11.00C); and a marked limitation in one of the following:

1. Physical functioning (see 11.00G3a); or

16

2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

3. Interacting with others (see 11.00G3b(ii)); or

4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or

5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 11.02B.

"'Despite adherence to prescribed treatment' means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." Id. 11.00C.  "We require at least one detailed description of your seizures from someone, preferably a medical professional, who has observed at least one of your typical seizures."  Id. 11.00H2.

> Counting seizures. The period specified in 11.02A, B, C, or D cannot begin earlier than one month after you began prescribed treatment.  The required number of seizures must occur within the period we are considering in connection with your application or continuing disability review.  When we evaluate the frequency of your seizures, we also consider your adherence to prescribed treatment (see 11.00C).
>
>        ***
>
>     d. We do not count seizures that occur during a period when you are not adhering to prescribed treatment without good reason.

20 C.F.R., Pt. 404, Subpt P, App. 1, § 11.00H4.

### B.    The ALJ's Relevant Findings

The ALJ found Plaintiff has migraines as a severe impairment.  (R. 16) (unnumbered finding at bottom of page).  She noted,

an individual's symptoms will not be found to affect the ability to perform work-related activities unless medical signs or laboratory findings show a medically determinable impairment is present that could reasonably be expected to produce the alleged symptoms. This evidence must also come from an acceptable medical source. (See 20 CFR 404.1521 and 416.921; see also SSR 16-3p).

Id. 18.

She found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. (finding no. 3, bold omitted). She stated she had "considered all [Plaintiff's] impairments individually and in combination, but c[ould] find no evidence that the combined clinical findings from such impairments reach the level of severity contemplated in the Listings." Id.

She explained her evaluation of Plaintiff's migraines:

Per SSR 19-4p, headache disorders such as the claimant's migraines are not a listed impairment, but the functional limitations caused by headache disorders, alone or in combination with another impairment(s), may medically equal a listing. However, listing 11.02 Epilepsy, is the most closely analogous listed impairment for a primary headache disorder. However, while the claimant alleges periodic headaches, physical exams do not document co-occurring observable signs, such as occasional tremors, problems concentrating or remembering, neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction of the pupil, drooping of the upper eyelid, red eye, secretion of tears, or the need to be in a quiet or dark room during an examination (e.g., 3F/4; 4F/9, 11; 7F/3; 9F/2; 10F/3, 16; 12F/14). Thus, while the claimant may indeed have headaches, exams do not document any objective evidence indicating that her headaches are incapacitating, even temporarily, as one would expect with a seizure disorder. Therefore, the evidence does not suggest that the severity of the claimant's headache disorder medically equals listing 11.02. Additionally, pursuant to SSR 17-2p, for an impairment to medically equal a Listing the record must contain one of the following: (1) a prior administrative medical finding from a medical or psychological consultant

from the initial or reconsideration adjudication levels supporting the medical equivalence finding; (2) medical expert evidence; or (3) a report from the Appeals Council's medical support staff supporting a finding of medical equivalence. None of these evidentiary requirements is satisfied in this case, and an administrative law judge is not required to obtain medical expert evidence or a medical opinion to establish the claimant's migraines do not medically equal a Listing. Because no evidence supports medical equivalence, the claimant's headache disorder, considered both singly and in combination with other impairments, does not medically equal a Listing.

(R. 20-21). The court will not repeat it here, but notes it quoted the ALJ's discussion of the treatment records regarding Plaintiff's headaches supra at 11.

### C.    Analysis

The burden to prove disability at step three is the Plaintiff's. The case law cited by Plaintiff tending to suggest otherwise, or otherwise to obfuscate the issue, are district court cases and one circuit court case outside the Tenth Circuit, all of which are not binding on this court. (Pl. Br. 8-9). The court is aware an ALJ must apply and follow the Commissioner's regulations and rulings as discussed above, but to the extent Plaintiff suggests the Commissioner has some greater responsibility than to apply the correct legal standard and to make findings that are supported by substantial evidence in the record, that is not the law, and any case that might suggest such a requirement is not persuasive. Here, Plaintiff has the burden to prove her condition is of at least equal medical significance to each and every criterion of Listing 11.02B or Listing 11.02D. If substantial evidence in the record ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion') supports the ALJ's determination that the Listing is not medically equaled, Plaintiff has not met her burden, and the ALJ is not

required to address the impact on functioning of every other criterion, as Plaintiff's Brief

suggests.

>Here, the ALJ noted that

>physical exams do not document co-occurring observable signs, such as
>occasional tremors, problems concentrating or remembering, neck stiffness,
>dizziness, gait instability, skin flushing, nasal congestion or rhinorrhea
>(runny nose), puffy eyelid, forehead or facial sweating, pallor, constriction
>of the pupil, drooping of the upper eyelid, red eye, secretion of tears, or the
>need to be in a quiet or dark room during an examination.

(R. 21).

>SSR 19-4p notes that the agency will consider a combination of findings including

a diagnosis by an acceptable medical source (AMS), remarkable or unremarkable

findings on laboratory tests, response to treatments, and an observation of a typical

headache event wherein an acceptable medical source

>is often able to observe and document signs that co-occur prior to, during,
>and following the headache event.  Examples of co-occurring observable
>signs include occasional tremors, problems concentrating or remembering,
>neck stiffness, dizziness, gait instability, skin flushing, nasal congestion or
>rhinorrhea (runny nose), puffy eyelid, forehead or facial sweating, pallor,
>constriction of the pupil, drooping of the upper eyelid, red eye, secretion of
>tears, and the need to be in a quiet or dark room during the examination.

SSR 19-4p, 2019 WL 4169635, *6.

>SSR 19-4p also explains that the step three evaluation of Listing 11.02B includes

the AMS's description of "a typical headache event including all associated phenomena

(for example, premonitory symptoms, aura, duration, intensity, and accompanying

symptoms)."  Id.  Moreover, the SSR explains that when evaluating Listing 11.02D at

step three, the SSA will consider the same factors as Listing 11.02B plus additional

factors.  Id.

Thus, the ALJ pointed to a criterion for which evidence was not present and

thereby precluded medically equaling Listing 11,02B or D.  Moreover, Plaintiff makes no

attempt to point to record evidence which is of at least equal medical significance to this

criterion—or any other criterion—required to medically equal the Listings, such as

prescribed treatment for migraines (as discussed supra, there is no record evidence of any

specific treatment for migraine headaches, much less prescribed tretment) adherence to

that prescribed treatment, with headaches continuing at the required frequency for three

months despite adherence to the treatment prescribed.  Consequently, Plaintiff failed in

her burden to demonstrate her migraines are medically equivalent to the severity of either

of these Listings.

The ALJ's finding there is no record evidence to suggest either of the Listings

might be met, and Plaintiff's having failed to identify such record evidence, necessitates

the court's determining the ALJ was not considering finding Plaintiff's impairments

medically equaled a Listing.  Consequently, the ALJ did not err in relying on SSR 17-2p

to find the lack of an agency approved medical opinion was an additional reason to find

no medical equivalence, and the ALJ did not fail her duty to adequately develop the

record.

## IV.    Alleged Failure to Account for All Limitations

Plaintiff argues, "Despite a medical record confirming the Plaintiff's migraine

headaches and testimony of associated symptoms such as photophobia, phonophobia and

migraines lasting 2-3 days at a time, the ALJ formulated an RFC … that does not account for all functional limitations from the Plaintiff's migraines."  However, the court found <u>supra</u> at p.11, "The ALJ provided her rationale for discounting Plaintiff's allegations of disabling symptoms, that rationale is supported by the record evidence, and Plaintiff points to no evidence compelling a different finding."  Thus, the ALJ properly discounted Plaintiff's allegations of symptoms of disabling migraines.  Moreover, as discussed <u>supra</u>, at p.5, only one medical record mentions "migraines," and that record only refers to a past medical history of migraines.  (R. 321).  Finally, as noted <u>supra,</u> at pp.21-22, the record does not contain an observation of a typical headache event by an acceptable medical source—or by a third party as suggested by SSR 19-4p, 2019 WL 4169635, *6. There is simply no evidence in the record, other than Plaintiff's self-serving allegations, to suggest Plaintiff's migraines cause any limitations beyond those in the RFC assessed by the ALJ.

Plaintiff has shown no error in the ALJ's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 16, 2025, at Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
**John W. Lungstrum**
**United States District Judge**